# REPORTS OF CASES

ADJUDGED IN

# THE COURT OF APPEALS

OF THE

# DISTRICT OF COLUMBIA.

## McCARTNEY v. FLETCHER.

EQUITY; STATUTE OF FRAUDS; TRUSTS, EXPRESS AND RESULTING; HUSBAND AND WIFE; PRESUMPTIONS; VOLUNTARY CONVEYANCES.

1. A court of equity cannot, under Section 7 of the Statute of Frauds, upon a petition by the heirs of the husband, execute a parol trust agreed upon between a husband and wife at the time of execution of deeds conveying to her the legal title to land, under which parol trust he was to retain the control and beneficial ownership of the property.

2. Under Section 8, of the Statute of Frauds, a resulting trust may arise where an estate is purchased in the name of one person but the purchase money is paid by another; but an exception occurs to this rule where the purchase is made and the purchase money paid by a husband or father and conveyance is taken in the name of the wife or child; in which case, there is *prima facie*, at least, no resulting trust to the purchaser, but the purchase and conveyance will be deemed a gift, advancement or settlement.

3. In such cases, while parol evidence is admissible to establish the collateral facts, not contradictory to the deed, except in case of fraud, from which a trust may legally result, such evidence is received with great caution.

4. Where, in such a case, it appears from the evidence that it was intended that the grantee should take the legal estate only, the equitable interest, or so much of it as was left undisposed of, will result to the grantor or his heirs; but it must clearly appear beyond doubt that the beneficial interest was not intended to be transferred.

5. A conveyance to a wife or child will be presumed to carry a beneficial interest, and whenever that presumption is at-

11 Ct. App.—2

tempted to be overcome, it can only be done by the most indubitable evidence; and where a husband has divested himself of the legal estate in favor of his wife, the presumption that the beneficial interest was intended to pass, is so strong as to be almost irrebuttable.

6. Where it is sought to establish a resulting trust in favor of the heirs of a husband who had allowed the legal title of his land to be taken in the name of his wife by absolute deeds, loose declarations made by the husband in which the wife is not shown to have joined or concurred, unsupported by evidence of any acts of dominion and control over the property after the making of the deeds to the wife, do not furnish evidence even tending to overcome the presumption that the wife took both the legal and beneficial estate in the property.

7. The fact that such deeds recite money considerations as passing from the wife does not furnish evidence that the deeds were not intended as settlements upon the wife by the husband.

8. No presumption that a personal benefit was intended to the party advancing the funds for the purchase of land in the name of another can arise where the obligation exists on his part, legal or moral, to provide for the grantee, as in case of a husband for his wife or a father for his child.

9. The evidence produced on behalf of the complainants in such a case considered, and *held* not sufficient to establish a resulting trust, especially as against the sworn answer of the defendants.

10. The evidence in such a case also held not sufficient to show such an agency on the part of the wife, or fiduciary relations between the husband and wife, as to overcome the presumption that the property was to be owned by her in her own right.

11. The mere making of deeds by a husband to his wife, or his directing them to be made to her as grantee, is not a sufficient part or complete performance, in such a case, as will take the case out of the operation of the Statute of Frauds; nor will the exercise of such authority or supervision over the property as a husband usually exercises over the real estate of his wife, be construed into such acts of ownership as can only be referable to rights of his under the alleged trust.

12. The mere refusal of a supposed trustee to execute a parol trust, or the denial of its existence, is not such a fraud as will take the case out of the Statute of Frauds and authorize a court of equity to enforce the trust.

13. Where any important provision has been omitted from a deed, whether intentionally by the parties, or through mistake of the law as to the necessity of incorporating it in the deed, or through carelessness or inattention at the time of executing the instrument, and no fraud is charged or proved against the

grantee in the deed, who denies the existence of any such provision as that alleged to have been omitted, parol evidence is not admissible to add to or vary the terms of the instrument.

No. 617.  Submitted January 12, 1897.  Decided April 27, 1897.

HEARING on an appeal by the complainants from a decree dismissing a bill in a suit seeking to have a trust declared upon certain real estate.  *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Hugh T. Taggart, Mr. Robert Christy, Mr. W. V. R. Berry* and *Mr. A. S. Worthington* for the appellant.*

*Mr. Edmund Burke* and *Mr. W. L. Cole* for the appellees.†

Mr. Chief Justice ALVEY delivered the opinion of the Court:

The object of the bill in this case is to have determined the question whether certain parcels of real estate held by the defendant, Susan Fletcher, at the time of the death of her husband, William Fletcher, belonged to her in her own right, or were held by her as trustee of her husband in his lifetime, and since his death as trustee for his heirs at law.

William Fletcher died in March, 1893, intestate.  He had been twice married, and by his first wife he had two children, Annie C. Fletcher, now the wife of Peter McCartney, and William F. Fletcher.  His first wife died in 1861, and he married Susan, the defendant and surviving widow, in 1863, and by her he had five children, namely, Mary J., who is the wife of William E. Collier; Charles P. Fletcher, Katie C. Fletcher, Susan E. Fletcher and James Fletcher, the last named being an infant under 21 years of age. These seven children all survived the father and are his only heirs at law.

The bill was filed by Annie C. McCartney, William F.

*For briefs of counsel for appellant, see 10 App. D. C. 586.
†For briefs of counsel for appellees, see 10 App. D. C. 591.

Fletcher, and Mary J. Collier, against Susan Fletcher, the widow; Charles P. Fletcher, Katie C. Fletcher, Susan E. Fletcher, and James Fletcher, the infant. The bill alleges that Susan Fletcher, the widow, when she was married to William Fletcher, was entirely without property of any kind, but that William Fletcher had, at that time, considerable property, and subsequently acquired a great deal more, and became a man of considerable wealth. That being importuned by other persons to make them loans, and to indorse notes, and to become surety on bonds and other obligations, and to engage with them in various speculations and ventures, he, *for the purpose of making it appear* that he was without the means of complying with such requests, resorted to various devices, the principal one of which was to put his property in his wife's name. That several purchases were made of parcels of real estate by the husband, and the money paid therefor by him, and, by his procurement and direction, the deeds therefor were made directly to the wife Susan; that, in other cases, several valuable parcels of real estate owned by the husband, and for which he held conveyances to himself, he conveyed to third parties, for pretended or fictitious considerations, and procured the same to be conveyed to his wife by such third persons, upon like fictitious considerations; and she holds all the property so conveyed, and claims it as her own. It is charged in the bill "that the said Susan, at the time of the making to her of all and singular the deeds aforesaid, well knew and well understood that the lands conveyed were to be held by her simply as trustee, subject in all respects to the uses of him, the said William, and to his control and dominion."

The prayer of the bill is for discovery, and is substantially similar to the prayer for discovery in relation to the real estate contained in the bill in the preceding case, No. 616; and further that the court should "declare that the said Susan, under the said deeds of conveyance to her for

said lots and parcels of ground in said squares twenty-seven (27), forty-three (43), ninety-nine (99), one hundred and fifty-two (152), two hundred and fifty-four (254), and nine hundred and ninety-five (995), in the city of Washing-ington, and forty-three (43), in the city of Georgetown, *holds the same as trustee* for the complainants and the other children and heirs at law of the said William Fletcher, deceased, in equal shares in fee, and that in and by such decree title to the said lots and parcels of ground in said squares be vested in said complainants and in said other children and heirs at law of said William Fletcher, deceased, in equal shares in fee; and for an account of the rents and profits of the said lots and parcels of ground in squares, &c., which have accrued since the death of him, the said William Fletcher, &c., and that the same may be distributed in equal shares and proportions among his said children and heirs at law." The bill also prays for a receiver, &c.

All the adult defendants were required to answer under oath, and by the answer it is averred that, as to certain parcels of the real estate conveyed to the defendant Susan, she had paid for them from means earned and realized by her own labor and industry, by and with the consent of her husband; and that, as to the other parcels of the real estate conveyed to the defendant Susan, her husband had purchased the same from other persons, and had caused them to be conveyed to her in consideration of his love and affection for her, and with the intention of making her the absolute owner thereof; and that as to all the real estate which she had not purchased with her own means, or which he had not purchased and caused to be conveyed to her in manner aforesaid, he being the owner thereof, had conveyed it to her through third persons, in consideration of love and affection for her, and with the intention of making her the absolute owner of the same. There is an absolute and unqualified denial of any intention or under-standing that such conveyances were made in trust for

William Fletcher and his heirs, as charged in the bill, or
that any trust whatever, either express or implied, was con-
templated in their favor.   There is no allegation or pre-
tense that the deeds furnish evidence of any trust, or that
there is any writing to evidence a trust, as required by the
Statute of Frauds.   The deeds are all in form the ordinary
deeds of bargain and sale, and contain the ordinary *haben-
dum* clause: "To have and to hold the said pieces or par-
cels of ground and premises and appurtenances unto the
said party of the second part, her heirs and assigns, *to her
and their sole use, benefit and behoof forever*;" without more as
to the use of the estate.   The defendants set up and rely
upon the provisions of the Statute of Frauds, 29 Car. 2, Ch.
3, as a bar to the attempt to engraft upon the deeds an ex-
press parol trust in favor of the deceased, William Fletcher,
and his heirs.

The first and principal question in the case is, whether
the Statute of Frauds has application, or whether the al-
leged trust is. of a character to be excluded from the opera-
tion of Section 7 of the Statute of Frauds, and embraced
within the exception contained in Section 8 of that statute.
This question depends upon the terms of the statute, the
agreements and understandings under which the convey-
ances were made, and the relation of the parties and the cir-
cumstances of the case.

By Section 7 of the Statute of Frauds, it is enacted that
"*all declarations or creations of trusts or confidences,* of any
lands, tenements or hereditaments, shall be manifested and
proved by some writing signed by the party who is by law
enabled to declare such trusts, or by his last will in writ-
ing, or else *they shall be utterly void and of none effect.*"

Section 8 of the statute provides that "where any convey-
ance shall be made of any lands or tenements by which a
trust or confidence shall or may *arise or result by the implica-
tion or construction of law,* or be transferred or extinguished
by an act or operation of law, then, and in every such case,

such trust or confidence shall be of the like force and effect as the same would have been if this statute had not been made; anything hereinbefore contained to the contrary notwithstanding."

Whether the complainants by the allegations of their bill intended to set up and engraft upon the deeds to the wife an express parol trust, or to attempt to establish by parol proof an implied and resulting trust in the husband, William Fletcher, and his heirs, would seem to admit of some doubt. From the terms of the allegations of the bill, it would appear that an express parol trust was in the contemplation of the pleader; and this is more clearly shown by the contention in argument, as stated in the elaborate and carefully prepared brief of the counsel for the complainants. It is there contended, on behalf of the complainants, "that it was agreed between the husband and wife that the title to the real estate of the husband should be vested in the wife, to the end that she might manage that, as well as his personal property, as his agent; that the deeds by which the legal title to the real estate here involved was vested in her were made in pursuance of this understanding and agreement; that the purchase money in each case was paid from funds belonging to him; and that the understanding between him and her at the time each of the deeds in question was made was that she was to hold the same as his agent and trustee and for his benefit; and that this agreement was actually carried into effect up to the time of his death; that it therefore follows that, although there was no writing or memorandum signed by her evidencing the agreement, his heirs, as to the real estate, are entitled to have the agreement enforced, notwithstanding the Statute of Frauds."

This is a broad and very sweeping contention, and it seems to be founded upon a theory of a right *to specific execution of the parol trust agreed upon at the time of the execution of the deeds to the wife*; and if this contention were founded upon authority, it would leave nothing to be investigated except the question

of fact, whether such an agreement or understanding as that alleged and contended for in argument actually existed at the time of the making of the several deeds to the wife. But it is only necessary to read the seventh section of the Statute of Frauds to see that such contention is in the teeth of the terms of that section, and that such contention can not be supported, if any force or effect be allowed to the terms of the statute.    Indeed, in view of the character and nature of the evidence produced in support of the contention stated, no case could occur that would more fully demonstrate the wisdom of the statute than the present.    The evidence is of the most doubtful and indefinite character; and such case as that here presented for the support of an express parol trust falls within the cogent reasoning and vigorous language of the late Mr. Justice Grier, speaking for the Supreme Court, upon the subject of the wisdom and application of the statute and of the loose and uncertain evidence that it was intended to exclude, in the case of *Purcell* v. *Miner,* 4 Wall. 513, 517.    This court has also passed upon the application of the statute, in a case where an attempt was made to engraft an express parol trust upon a conveyance of property, without anything on the face of the conveyance to indicate the trust.    *Meech* v. *The Smithsonian Institution,* 8 App. D. C. 490.    In that case it was held that the statute applied and that the attempt to establish the trust by parol evidence could not be maintained; that the parol agreement in relation to the trust was simply null and void under the statute.

But, viewing this case in its most favorable aspect, and treating it as an effort to bring it within the scope and purview of Section 8 of the Statute of Frauds, whereby a trust or confidence may *arise or result by implication or construction of law,* the attempt must be equally abortive and unavailing.

Resulting trusts, or those which arise by implication of law, are, as we have seen, especially excepted from the

operation of the statute, and trusts of this nature arise in three cases: First, where the estate is purchased in the name of one person, but the purchase money is paid by another. Secondly, where a conveyance is made in trust declared only as to part, and the residue remains undisposed of, nothing being said or declared respecting such undisposed of part; and, thirdly, in cases of fraud. *Lloyd* v. *Spillett*, 2 Atk. 150. In regard to the first class of resulting trusts, just mentioned, an exception occurs where the purchase is made and the purchase money paid by a husband or father, and the conveyance is taken in the name of the wife or child. In such cases there is, *prima facie*, at least, no resulting trust for the purchaser, but the purchase and conveyance will be deemed a gift, advancement or settlement as the case may be, for the wife or child, because of the duty or obligation of the husband or father to make provision for his wife or child. In all such cases, however, it appears to be settled, after some conflict of decision, that parol evidence, though received with great caution, and not deemed sufficient unless it be of a very clear character, is admissible to establish the collateral facts (not contradictory to the deed, unless in the case of fraud), from which a trust may legally result. 2 Story Eq. Jur., Secs. 1201, 1202; *Lench* v. *Lench*, 10 Ves. 517; 4 Kent Com. 305. And as a resulting trust may be established by parol evidence, it may also, notwithstanding the statute, be rebutted by the same species of proof; and therefore parol evidence will be admitted to prove the purchaser's or grantor's intention that the person to whom the conveyance was made should take beneficially. 2 Sto. Eq. Jur., Sec. 1202; *Dyer* v. *Dyer*, 2 Cox R. 93; Sugden on V. & P., Ch. 15, Sec. 2, pp. 615 to 628; 2 Tayl. Ev., p. 896.

The larger portion of the real estate that was conveyed to the wife in this case, was conveyed by the husband to third parties, and by such third parties conveyed to the wife. It is said in the authorities that it is a common case

of a resulting trust, where the owner of both the legal
and equitable estate conveys the legal title only, with-
out conveying the equitable interest. In all such cases,
however, there ought to be apparent some good reason for
the attempt to separate the legal from the equitable estate.
The general rule in such cases is, *that wherever it appears upon
a conveyance* that it was intended that the grantee should take
the legal estate only, the equitable interest, or so much of
it as is left undisposed of, will result to the grantor or his
heirs. 1 Perry on Trusts, Sec. 150. This may occur where
a husband owning both the legal and equitable estate, con-
veys the property either directly to the wife, or to a third
person, and that third person, by the direction of the hus-
band, conveys to the wife. But in such case, it must clearly
appear beyond doubt, that the beneficial interest *was not in-
tended to be transferred*; and whether the conveyance in such
case was intended to convey the beneficial as well as the legal
estate, is sometimes left to rest on presumption, but more
frequently it is expressed upon the instrument itself in such
manner as to leave no doubt of the intention of the parties.
A grantor of a voluntary conveyance may always protect or
secure any beneficial interest that he may desire to retain in
the property, either by proper limitations or by power of
revocation; and if he fails so to secure himself, the presump-
tion becomes very strong that it was the intention to convey
all interest both legal and equitable. *Cook* v. *Hutchinson,* 1
Keen, 42, 50; 1 Perry on Trusts, Secs. 150, 151. There
seems to be no general rule that can be stated that will de-
termine in all cases when a conveyance will carry with it a
beneficial interest, and when it will be construed to create a
trust by implication or construction of law; but the inten-
tion is to be gathered in each case from the scope of the in-
strument and the special circumstances under which it was
made. There is one general principle, however, that may
be stated as settled, and that is, that a conveyance made to
a wife or child will be presumed to carry a beneficial interest,

and whenever that presumption is attempted to be over-come, it can only be done by the most indubitable evidence. And where the husband, as in this case, has divested himself of the legal estate in favor of his wife, the presumption that the beneficial interest was intended to pass is so strong as to be almost irrebuttable. Indeed, in such case, there is no substantial reason for the conveyance, if not to convey the beneficial interest, as well as the mere legal title. And another principle must be kept in mind, and that is, that no parol evidence can be allowed to contradict the terms of the deeds, except where they are impeached for fraud.

It is alleged in the bill that the grantor, the husband, re-tained his dominion and control over the property conveyed, up to the time of his death. But this is a mere general allegation, without designating what particular or kind of acts of dominion and control were exercised by him, and whether such acts were exercised against the will and consent of the wife, or otherwise; and the record furnishes no admissible evidence of any such acts of dominion and control over the property, after the making of the deeds to the wife, as would indicate an exclusive ownership in himself, regardless of the title in the wife. The deeds to the wife were all duly executed, delivered, and recorded; and the property assessed in her name; and the charge both in the present and the preceding case, No. 616, is that the wife collected and received all the rents of the property embraced in the several deeds to her. Loose declarations made by the husband, upon mere chance occasions, in which the wife is not shown to have joined or concurred, and his desire to make a will just before his death, do not furnish evidence even tending to overcome the presumption that both the legal and beneficial interest in the property had been conveyed to the wife by the deeds to her.

There is no charge of fraud or undue influence practiced upon the decedent to induce him, against his free will and judgment, to convey and cause to be conveyed the property

to his wife. The theory of the bill is, that the making of the deeds were the voluntary acts of the husband, but made for a mere ostensible object of his own, and as a shield and protection against the importunities of his friends; and while such may have been one of the motives for his action, it does not follow that it was the only motive that actuated him in making the deeds to his wife. As the owner of the property, he certainly had entire and absolute control of it, with full and unqualified right to dispose of it as he thought proper, either by deed or will, provided he did not impair the legal rights of others, such as creditors. In the absence of any superior claims, he had the undoubted right and power, without any money consideration, to make and cause to be made voluntary deeds of the property in controversy to his wife, for her beneficial enjoyment; and if the facts and circumstances of the case are not sufficiently strong to rebut and overcome the presumption that the deeds were intended to convey the beneficial interest in the property, as well as the legal estate, the complainants have no ground whatever for relief. *Groff* v. *Rohrer*, 35 Md. 327, and the authorities there cited. As said by Mr. Chief Justice Marshall in the case of *Sexton* v. *Wheaton*, 8 Wheat. 229: "It would seem to be a consequence of that absolute power which a man possesses over his own property, that he may make any disposition of it which does not interfere with the existing rights of others, and such disposition, if it be fair and real, will be valid. The limitations on this power are those only which are prescribed by law."

The making of the deeds in this case to the wife would seem to have been in the exercise of that unquestionable right of the husband over his own property.

There is a class of cases much relied upon by the counsel for complainants, of which the case of *Young* v. *Peachey*, 2 Atk. 254, may be considered the leading one; and that case is cited and quoted from in the brief of counsel for the complainants, with strong emphasis. The decision in that

case was by Lord Chancellor Hardwicke, and it is not only entitled to great respect, but it maintains a most important principle of equity jurisprudence. That was a case where a father, upon deceitful and fraudulent representations as to the objects and purposes of the conveyance, obtained an absolute conveyance from his daughter, professedly for one object or purpose only, and after obtaining the deed, he made use of it for another and a wholly different purpose; and the court held that the plaintiffs were entitled to relief upon the ground of fraud. In that case there was no real or valuable consideration for the deed, though there was a consideration appearing on the face of it; and one of the grounds urged for relief was that there was a resulting trust in favor of the daughter, or those entitled in her right; but as to that contention the Lord Chancellor said:

"Now, as to that, I am of opinion that there was no such trust; for if a trust by implication was to arise in the present case, it would be to contradict the Statute of Frauds; for it might be said in every case, where a voluntary conveyance is made, that a trust shall arise by implication; but that is by no means the rule of the court. Trusts by implication, or operation of law, arise in such cases where one person pays the purchase money, and the conveyance is taken in the name of another, or in some other cases of that kind. But the rule is by no means so large as to extend to every voluntary conveyance. For these reasons," his lordship said, "the plaintiffs could not be relieved under the notion of a trust; however, he thought that they had a proper ground for relief under the head of fraud."

In the present case, there is no charge of fraud, or deceit, or misrepresentation of any kind, in obtaining the deeds to the wife, nor are the deeds asked to be vacated; but the relief prayed is that a trust be declared, which is founded upon the assumption that the deeds are valid conveyances as to the *legal estate* in the property conveyed.

The deeds all recite money considerations as passing from

the wife, and this fact is relied on as a circumstance to show that the deeds were not intended as settlements upon the wife by the husband, even though such recitals are shown not to be founded in fact.   The making of these deeds were the acts of the husband, and the effect and operation of the deeds, as voluntary instruments, are in no manner affected or restrained, as between the husband and wife, and those claiming under them, because of the misrecital of the consideration:   As against creditors of the husband a different question might arise.

A similar question to that here suggested arose in the case of *Sexton* v. *Wheaton, supra.*   In that case the deed to Mrs. Wheaton recited that the purchase money had been paid by her; and in disposing of the objection to the deed founded upon that fact, Mr. Chief Justice Marshall said : "The allegation that the purchase money was derived from her private individual funds, is supported by circumstances which may disclose fair motives for the conveyance, but which are not sufficient to prove that the consideration, in point of law, moved from her.   It must, therefore, be considered as a voluntary conveyance, and, if sustained, must be sustained on the principle, that it was made under circumstances which do not impeach its validity when so considered."   That conveyance was sustained as a voluntary conveyance by the husband to the wife—the conveyance being made through third parties, on the purchase by the husband.

The principles of law applicable to this case are very fully and clearly stated by Mr. Justice Field, as the organ of the Supreme Court, in the case of *Jackson* v. *Jackson*, 91 U. S. 122, 125.   In that case it was held that no presumption that a personal benefit was intended to the party advancing the funds for a purchase in the name of another can arise where an obligation exists on his part, legal or moral, to provide for the grantee, as in the case of a husband for his wife, or a father for his child.   "The circumstances that the

grantee stands in one of these relations to the party is of itself sufficient evidence to rebut the presumption of a resulting trust, and to create a contrary presumption of an advancement for the grantee's benefit;" citing several well recognized cases in support of the proposition stated. The court also fully approved and adopted the principle of the case of *Sexton* v. *Wheaton, supra,* as being a well-settled principle of law.

We have examined carefully the great mass of testimony produced in the preceding case, No. 616, and by stipulation introduced into this, but we have not been able to find any evidence of a kind and force sufficient to overcome the strong presumption that the deeds to the wife were intended to convey the beneficial interest in the property to her. The evidence is, at best, but circumstantial and inferential; and much of it is wholly incompetent and inadmissible as proof; and the rest of it is too slight and inconclusive, and especially as against the sworn answer of the defendant, Susan Fletcher, to overcome the presumption in support of the deeds, as to the intention to convey the beneficial interest in the property.

Upon the whole, we must affirm the decree of the court below, dismissing the bill; and it is so ordered.

*Decree affirmed.*

On May 8, 1897, a motion for reargument was filed on behalf of the appellants.

On June 22, 1897, the motion was overruled, Mr. Chief Justice ALVEY delivering the opinion of the Court:

In this case a motion has been made on the part of the appellants for reargument or further consideration of two questions, which counsel suppose have not been sufficiently considered in the opinion heretofore delivered, to wit: first, "that the case was taken out of the Statute of Frauds by *the complete performance,* on the part of William Fletcher, *of the oral agreement between* him and his wife, relied upon by

the appellants;" and, second, " that as it had been shown that his wife, prior to the deeds in question, as well as afterwards, was his agent in financial matters, and had charge as such agent of all his property, real and personal, the presumption from this fiduciary relation would be that any property that was conveyed to her by him was to be held by her as such agent, and not in her own right." The appellants say that they do not rely upon Sec. 8 of the Statute of Frauds, relating to trusts by implication of law, but upon an express parol trust, partly performed. It is also suggested, that the case of *Townsend* v. *Vanderwerker*, 160 U. S. 171, has some material bearing upon these questions, and which case had been overlooked by counsel, and was not brought to the attention of the court at the argument.

Without stopping to criticise the propositions stated in the motion, for the assumptions of fact made therein, we shall not, as to the second of the questions stated, go into a further examination thereof, than is contained in the opinion heretofore filed in this case and in the opinion filed in the preceding case, both made substantially upon the same state of facts. In these opinions we have concluded, upon full consideration of the facts, that there was no such agency or fiduciary relations established, as contradistinguished from the natural and reasonable confidence subsisting between husband and wife, and their motives for mutual co-operation, the one with the other, for success in life (in this case the wife being the more saving and provident of the two), as would affect and overcome the strong presumption that the conveyances to the wife were made for her beneficial use, and not to her in trust for her husband, and his heirs at law. There is no allegation of fraud or undue influence made in the case, but the application is to have an express parol trust declared and engrafted upon the deeds to the wife, which assumes that the deeds express upon their face exactly what it was intended they should express.

With respect to the first question suggested in the motion, that is, as to the case being withdrawn from the operation of the Statute of Frauds, because, as it is alleged, of the *complete performance,* on the part of William Fletcher, of the oral agreement between him and his wife, it may be proper for us to add some further statement of the doctrine that seems to be pertinent to the particular question suggested.

In the opinion heretofore filed, in speaking of the evidence to prove the existence and specific terms of the alleged agreement or understanding upon which the court was asked to declare the trust, we said that, in view of the character and nature of the evidence produced in support of the contention of the appellants, no case could occur that would more fully demonstrate the wisdom of the Statute of Frauds than the present.    That the evidence is of the most doubtful and indefinite character; and such case as that here presented for the support of an express parol trust, falls within the cogent reasoning and vigorous language, of the late Mr. Justice Grier, speaking for the Supreme Court, in the case of *Purcell* v. *Miner,* 4 Wall. 517; and we are all familiar with what was there said by the learned justice, and with the result of that case.    That declaration by this court, as the result of the evidence in this case to prove the contract of trust, was made upon a very full and careful examination of the proof, and we are very sure that there is nothing in the evidence that, on further consideration, would change our view of its force or effect.

There is literally no certain, clear and definite proof as to any specific contract of trust, as between husband and wife, before or at the time of the making of the deeds, and the only foundation for such contract is the inference drawn from the relation of the parties, and certain vague and indefinite statements or declarations made principally by the husband after the deeds had been made, and when he was wholly incompetent to control or affect the title vested in

the wife.  Before the court can be called upon to execute
or enforce a trust, it must be made entirely clear that there
was a trust declared and agreed upon, and what that trust
was.  *Forster* v. *Hale*, 3 Ves. 696 ; Browne on Stat. of Frauds,
Sec. 108.  No principle of part performance, or, indeed,
complete performance, by one party only, can be invoked
until it be clearly and definitely shown that that there was
a parol declaration of trust, and what that trust was, or
required the grantee in the deeds to do, in respect of the
property conveyed.  The doctrine of part conveyance, to
take a case out of the Statute of Frauds, is nowhere better
stated than by Justice Story, in his Equity Jurisprudence,
Sec. 764.  He there says: "But in order to take a case out
of the Statute of Frauds, upon the ground of part perform-
ance of a parol contract, it is not only indispensable that
the acts done should be clear and definite, and refer exclus-
ively to the contract, but the contract should also be estab-
lished by competent proof to be clear, definite and une-
quivocal in all its terms.  If the terms are uncertain or
ambiguous or not made out by satisfactory proofs, a specific
performance will not (as, indeed, upon principle, it should
not) be decreed.  The reason would seem obvious enough ;
for a court of equity ought not to act upon conjectures ;
and one of the most important objects of the statute was to
prevent the introduction of loose and indeterminate proofs
of what ought to be established by solemn written contracts.
Yet it is certain that, in former times, very able judges felt
themselves at liberty to depart from such a reasonable
course of adjudication, and granted relief, notwithstanding
the uncertainty of the terms of the contract.  In other
words, the court framed a contract for the parties *ex aquo et
bono*, where it found none.  Such a latitude of jurisdiction
seems unwarrantable upon any sound principle, and, accord-
ingly, it has been expressly renounced in more recent times."

But even supposing the proofs of the parol agreement or
understanding alleged, to be clear, the trust being without

writing to evidence it, is this a case for the application of
the doctrine of part performance to rescue it from the oper-
ation of the Statute of Frauds?　What acts of part perform-
ance, or complete performance, on the part of the grantor,
in a case like the present, can be relied upon to take the
case out of the statute?　The mere making of the deeds, or
directing them to be made to the grantee, would certainly
not be sufficient; for, if so, the statute would simply be
rendered nugatory and without effect.　Nor will the sub-
sequent declarations of the grantor, asserting ownership
to the property, without the express and clear assent
of the grantee, be admitted as evidence to affect the
title of the latter; nor will the exercise of such au-
thority or supervision over the property as a husband
usually exercises over the real estate of his wife be
construed into such acts of ownership as *can only be refer-
able* to rights of his under the alleged trust.　The statute
is imperative and admits of no qualification.　The trust
must be declared in writing, or else it shall be *utterly
void and of none effect.*　To take the case out of the Statute
of Frauds, says Chancellor Kent, the trust must appear in
writing, under the hand of the party to be charged, with
*absolute certainty as to its nature and terms,* before the court
can undertake to execute it.　Loose and general declarations
of intention, by one member of a family, of holding prop-
erty in trust for other members, are not sufficient for the
deduction of *a trust* which equity will recognize and enforce.
*Steere* v. *Steere,* 5 Johns. Ch. 1, 11; *Leman* v. *Whitley,* 4 Russ.
Ch. 423.　The authorities hold but one language upon this
subject, and that is, if there be an absolute conveyance of
the legal title to a supposed trustee, and there is no declara-
tion of trust prior to or at the time of the conveyance by
the grantor, and the assumed or alleged *cestui que trust* at-
tempts to charge the grantee with a trust in respect to the
land, he *must produce some writing signed by the grantee of the
legal title, in order to charge him with the trust.*　The objects

and nature of the trust must always appear from writing with sufficient certainty, and their connection with the subject-matter of the trust; and unless this be shown with perfect certainty and precision, the courts will not attempt to execute or enforce the trust. Express trusts of real estate can not be proved by parol; they must be, by the terms of the statute, *manifested or proved by some writing,* signed by the party to be charged with the trust. 1 Perry on Trusts, Secs. 79, 83, pages 65, 70, 71; Browne on Stat. of Frauds (3d Ed.), Secs. 105 to 109, and pages 98 to 101. And the mere refusal of a supposed trustee to execute a parol trust, or the denial of its existence, is not such a fraud as will take the case out of the Statute of Frauds, and authorize a court of equity to enforce the trust. *Scott* v. *Harris,* 113 Ill. 447; *Farnham* v. *Clements,* 51 Me. 426. To give effect to a mere parol trust in such case and on such ground, would be a virtual repeal of the Statute of Frauds, and to let in all the evils that were intended to be excluded by it.

There is no fraud or pretense of fraud alleged or attempted to be shown in the making of the deeds to the wife, nor is it alleged or shown that there was any mistake, or misapprehension of the parties as to the effect of such deeds. They are just what the parties intended them to be; and if a trust was designed at the time, there is no conceivable reason why it was not declared on the face of the deeds, or its terms reduced to writing, and not allowed to rest in mere parol. And that being the case, it is perfectly well settled, that where any important provision has been omitted from a deed, whether intentionally by the parties, or through mistake of the law as to the necessity of incorporating it in the deed, or through carelessness or inattention at the time of executing the instrument, and where no fraud is charged or proved against the grantee in the deed, who denies by his answer the existence of any such provision as that alleged to have been omitted, parol evidence

will not be received to add to or vary the instrument. The parties will be bound by the instrument as they have actually made it, and the court will not supply defects in it. *Hunt* v. *Rousmanier*, 1 Pet. 1, 12 to 16; *Inham* v. *Childs*, 1 Bro. C. Cas. 92, 93; *Portmore* v. *Miner*, 2 Bro. C. Cas. 219.

The case of *Townsend* v. *Vanderwerker*, 160 U. S. 171, referred to in the motion, has no material application to this case that we can perceive. It was a case of a bill brought against the administrator and heirs of an intestate, alleging a verbal agreement between the intestate and the plaintiff, by which the plaintiff was to contribute one-half the cost of a tract of land and of a dwelling house to be erected thereon, and the intestate, after entering on the property, was to convey to him a half interest therein; and the bill set forth, and the proof showed clearly, the full performance of the contract on the part of the plaintiff, by the expenditure of his money, and his personal supervision and assistance in the erection of the dwelling house on the land as required by the contract, and that the intestate never questioned that the plaintiff had paid his half in full, but stated to him and to mutual friends that he had paid in full, and was jointly interested with her in the premises; that his ownership of half of the premises was never disputed by her, but was openly recognized, and that, when he requested a settlement and that she convey his half to him, she replied that she had provided for that in her will, by which she gave him the entire property. This, as is manifest, was but a contract for the sale and conveyance of land upon valuable consideration; and the Supreme Court held that it could be specifically executed upon the application of the doctrine of part performance. It was not a case of an express parol trust, as this is alleged to be, arising under the seventh section of the Statute of Frauds, where the attempt is to engraft such parol trust, without the aid of writing, upon absolute deeds, making no reference to such trust, and that, too, against the sworn answer of the defendant making posi-

tive denial of the existence of such trust. No reliable authority for this has been produced.

The case of *Haigh* v. *Kaye*, 7 Ch. App. 469, was much relied on at the argument, as tending to support the contention of the appellants. But that case, though extreme in some of its features, and especially in some of the judicial reflections indulged in, does not appear to be at all applicable to this case. That was a case between a party and his brother-in-law, and where by the falsity of the consideration recited in the deed, and the fraudulent conduct of the defendant, *an implied or resulting trust was raised;* the defendant *expressly admitting in his answer that he had paid no consideration for the property,* and that, " he took the property upon the most positive agreement to return it." In that case, the plaintiff conveyed an estate to the defendant by deed, in which the estate was expressed to be conveyed absolutely in consideration of a sum of money paid by the defendant. But no purchase money was actually paid, and the plaintiff alleged that he conveyed the estate to the defendant as trustee for himself. The defendant, in his answer, admitted that he gave no consideration for the property conveyed, but stated that the plaintiff made the conveyance, fearing that an adverse decision would be made against him in a suit then pending in chancery; and that it was understood that the defendant should account to the plaintiff for the rents until he could make arrangements for paying the purchase money; and if no such arrangement could be made, that he should reconvey the estate. In the answer, the admission of the defendant was stated in these terms: " I admit that it was intended that I should convey the estate to the plaintiff when he should desire me to do so, unless arrangements were completed for the purchase or payment of the purchase money by me, and that in the meantime I should, until such arrangements were finally made, account to the plaintiff for the rents and profits of the property." The trust was thus admitted in writ-

ing, which, according to the authorities, was sufficient evidence of its existence under the statute, and authorized the court to enforce it. *Hampton* v. *Spencer*, 2 Vern. 288; *Cottington* v. *Fletcher*, 2 Atk. 155; *Maccubbin* v. *Cromwell*, 7 G. & J. 157. But, notwithstanding the arrangement or agreement thus admitted, the defendant claimed to hold the estate discharged of any trust, and claimed the benefit of the Statute of Frauds. But the court held, that the defendant had failed to maintain the defense set up by him, to wit, the illegality of the purpose for which the conveyance was made, and therefore the decree below was right in declaring that he should be treated as trustee of the property, and should convey it to the representatives of the original plaintiff. That case, clearly, has no application to the present case.

The motive or reason that actuated the grantor in making the deeds, or causing deeds to be made to his wife, is not a matter to be considered or controlled by the court. He had a perfect right to make the deeds, and to dispose of his property as he thought proper. If the disposition had been made by will, there could have been no question of the right, and the right equally existed to make a settlement to operate *inter vivos* as a disposition to operate only after death.

*Motion overruled.*