# THE WASHINGTON LOAN AND TRUST COMPANY

*v.*

# DARLING.

---

EQUITY; CONTRACTS; STATUTE OF LIMITATIONS; LACHES; JURISDICTION.

1. The testimony in a suit in equity to charge an estate in the hands of a trustee, with the payment of an annuity to the complainant in accordance with a contract made by the former owner of the estate, the daughter-in-law of the complainant, to pay the latter such annuity for services performed in the matter of a prior suit to prevent waste of the estate by former trustees, *reviewed*, the contract held to be supported by sufficient consideration, and a decree, charging the estate with payment of the annuity, *affirmed.*

2. The rejection by an executor of an unauthenticated claim by a creditor, did not, under Ch. 101, Sec. 18, Subch. 18, act of Maryland of 1798, have the effect to bring any part of it under the operation of the limitations prescribed by that act.

3. Failure by the claimant of an annuity from an estate under a contract with the decedent, to prosecute a suit against the executor

D. C.]                    Statement of the Case.

before his final discharge, will not preclude her from proceeding in equity to charge the estate in the hands of a trustee, who received it from the executor, with the payment of the annuity.

4. Where a debt is payable in independent instalments, the right of action accrues upon each as it matures, and if the obligee fails to commence his action until the statute of limitations has barred one or more instalments, he can only recover those not barred when his action was commenced.

5. In cases of concurrent jurisdiction, courts of equity will hold themselves bound by the statute of limitations that would govern an action at law upon the same demand; and where the demand is one ordinarily cognizable at law, but, because of special conditions, is enforceable only in equity, the bar of limitation will be applied, either in obedience to the statute, or by analogy, in the same way as at law.

6. For the same reason that a court of equity will apply the bar of the statute of limitations to the enforcement of a demand, it will ordinarily refuse to apply the bar of laches on a delay of less duration.

7. While a court of equity is not absolutely bound to apply the rule of the statute of limtations in all cases, yet, at the very least, there must be something extraordinary in the circumstances to justify a denial of relief on the ground of laches, when under the statute a corresponding action at law would not be barred.

No. 1246. Submitted December 5, 1902. Decided January 20, 1903.

HEARING on an appeal by the defendants from a decree of the Supreme Court of the District of Columbia, in equity, charging a trust fund with the payment of an annuity.
*Affirmed.*

The COURT in the opinion stated the case as follows:

This is an appeal from a decree charging the estate of Nancy Darling and Charles Tiernan Darling, held in trust for them by the Washington Loan and Trust Company under the will of their mother, Susan Gay Beatrice Spranger, deceased, with the payment of the sum of $50 per month to the appellee, Flora Adams Darling, during her life.

The following facts appear from the allegations and admissions of bill and answer:

Joshua Pierce died in the District of Columbia in 1869, leaving a will wherein he devised and bequeathed to John B. Blake and Moses Kelly a large estate, in trust to pay over to one Joshua Pierce Klingle the issue and profits of the same during his life, and after the death of said Klingle to hold the same for the use and benefit of such of his children as might be then living, in fee and absolutely.

Joshua Pierce Klingle died July 4, 1892, leaving but one child, Susan Gay Beatrice Klingle, who had become the wife of Edward Irving Darling on September 15, 1885. In February, 1889, Mrs. Darling began a suit against the trustees appointed by the will of Joshua Pierce, alleging breaches of trust and spoliation of the estate.

In April, 1890, an injunction was granted against the payment of more than $100 per month to said Joshua Pierce Klingle until the said waste should be repaired. Moses Kelly resigned as trustee and O. C. Green was appointed in his stead. Immediately after the death of said Klingle, to wit, July 13, 1892, a decree was passed directing the conveyance of the entire estate remaining in the hands of the trustees to his daughter, Susan Gay Beatrice.

Edward Irving Darling, who was the son of the appellee, died February 13, 1894. His widow married Dr. F. X. Spranger, March 6, 1895, and died in California, June 20, 1895. She left two infant children, Nancy and Charles Tiernan Darling.

She left a will, of which Arthur A. Birney was made executor. This will was duly probated and letters issued thereon to the executor.

She devised and bequeathed her estate to the Washington Loan and Trust Company, in trust, to collect and preserve the same, and pay certain sums for the support of her children aforesaid until they should attain the age of twenty-five years, at which time they shall come into the absolute possession.

On May 20, 1898, the executor of the estate passed his final account and was discharged, after the transfer of the estate remaining in his hands to the trustee aforesaid.

The demand of complainant, whose bill was filed August 22, 1900, is substantially this: In February, 1886, the complainant, at the request of her daughter-in-law, the said Susan Gay Beatrice Darling, began and for a long time thereafter continued to investigate the management of the trust estate by the trustees under the will of Joshua Pierce, for the purpose of maintaining the proposed suit to prevent the waste of said estate. In so doing she acted as attorney in fact for said Susan Gay Beatrice and also spent considerable sums of money in the course of said investigation and the consequent litigation. For the performance of said services the said Susan Gay Beatrice Darling promised to pay her the sum of $10,000. On July 18, 1892, when said Susan Gay Beatrice Darling came into possession of her estate, she promised and agreed to pay to the complainant, Flora Adams Darling, the sum of $50 per month, during the life of the latter, in lieu of the $10,000 aforesaid, which promise and agreement complainant accepted as compensation for her said services. The first payment under said agreement was made at the time, and payments were continued until about three months before the death of the promisor.

The answer of the defendant, founded necessarily on information obtained from others, denied the existence of any contract and the performance of any services, as alleged. It also charged that the demand had been presented to the executor, Birney, and rejected by him in July, 1895; that no action had been brought against him to establish said claim, and that the complainant had lost any right that she might have had through her laches.

On June 26, 1902, a decree was rendered in favor of the complainant declaring the trust in her favor, as prayed, and directing the payment to her of said sum of $50 per month from June 22, 1902, during life, and also the sum of $3,320.50 in satisfaction of all monthly instalments accruing between June 22, 1897, and June 22, 1902.

*Mr. Arthur A. Birney* and *Mr. John B. Larner* for the appellants:

1. The laches of the complainant should bar her suit. The court below failed to distinguish between limitations and laches, saying that if the contract is established in evidence, the defense of culpable delay in bringing the suit could not possibly bar a claim for the instalments that would not fall due for years after the filing of the answer. This conclusion ignores the difference in the rules prevailing in courts of law, where only limitation is recognized, and in courts of equity, where the laches of the plaintiff will bar without regard to the statute of limitations. In this case the right of complainant to establish her claim in a court of law had ended with the closing of administration in 1898; she sued in equity, and was therefore bound by the equitable rule which does not regard months or years. *Galiher* v. *Coldwell,* 145 U. S. 372; *Penn Mutual Life Ins. Co.* v. *Austin,* 168 U. S. 685, 696; *McKnight* v. *Taylor,* 1 How. 161.

2. There is no sufficient proof of a contract to pay $10,000 to warrant a finding that there was such contract.

*Mr. William B. Matthews, Mr. Charles A. Keigwin,* and *Mr. John Peirce Bruns* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. The first contention on behalf of the appellant is that the evidence fails to prove the contract alleged in the complainant's bill, with the certainty made necessary by the nature of that contract and the circumstances surrounding the transaction.

Besides testifying on her own behalf, the complainant introduced six witnesses in support of her demand, none of whom was directly contradicted or impeached.

The evidence is voluminous, in consequence, chiefly, of the prolonged cross-examination of the complainant, and the addition thereto of a mass of exhibits consisting of correspondence and newspaper clippings, a great part of which seems to us irrelevant.

After a careful consideration of all of this evidence we

perceive no satisfactory ground upon which to rest a reversal of the conclusion of the learned trial justice, and in view of his elaborate and well-considered opinion, which forms a part of the record, we see no occasion for an additional review.

We entirely agree with him that the complainant was the originator of the inquiry into the management of the trust created by the will of Joshua Pierce, which resulted in the partly successful litigation with the trustees thereof, and that she performed some services in the matter at the request of her daughter-in-law, who was hardly more than a child at the time of her marriage.

We also agree with him that there is nothing unreasonable in the promise of the daughter-in-law to compensate the complainant liberally for her services. Neither she nor her young husband had any business experience. Notwithstanding her remainder in the large estate she had no present means, and lived for a considerable time with the complainant who contributed to her support. The relations of mother, son, and daughter-in-law were then most confidential and affectionate.

These conditions furnish a foundation for the claim that the complainant, at the commencement of the investigation before mentioned, was promised a sum of money to be paid whenever the daughter-in-law should come into the enjoyment of her estate. Nor is there anything unreasonable, under all the surrounding circumstances, in the claim that, when the life estate had terminated, the daughter-in-law proposed and the complainant accepted the payment of $50 per month, for life, in lieu of the original sum that had been fixed as compensation for her services.

Now, as regards the evidence relied on to establish the original contract, as well as its substitution by that which is the foundation of the suit, we shall content ourselves with some extracts from the aforementioned opinion of Mr. Justice Hagner, as follows:

" The seven witnesses for the complainant are De Volney Everett, Mrs. English, an elderly lady and an intimate

friend of the complainant; Sarah Morris, a colored woman, who was for years a servant of Mrs. Beatrice Darling, and of Mrs. Darling, the complainant; Miss Adams, a daughter of Mr. John Quincy Adams; John Quincy Adams himself, who is a cousin of the complainant; and Mrs. McCullough, who was the keeper of a boarding-house in Detroit, in no way related to or connected with the complainant, who also testified in her own behalf.

"Each of these witnesses, in my judgment, offers evidence tending to prove the case presented in the bill. They testify also at large, and under the influence of the cross-examination very fully as to antecedent propositions, and about other and larger promises which had been made by Mrs. Beatrice Darling during the early progress of the suit, and after its completion, when the property had practically come into her possession.

\*        \*        \*        \*        \*        \*        \*        \*        \*

"No other objection against either of these witnesses is made, except that some of them are related to the complainant. Under the circumstances of the case, as the witnesses were nearest and most intimately associated with mother and children, they naturally would be the very persons who would know most about the subject. All of them testify to conversations in which Beatrice and her husband took part, and to explicit requests by them that the complainant would proceed with the case, and would procure the proper investigations to be made, with a view to preventing further loss to the estate from the conduct of the trustees, and to place the real owners in possession of their property without further damage from mismanagement.

\*        \*        \*        \*        \*        \*        \*        \*        \*

"Some of them are people of high respectability; and we cannot throw aside what they have said, in the absence of the slightest attempt to impugn their veracity or contradict them by other testimony, except by charging them with false swearing, for which there has been no possible explanation or motive."

2. We do not understand it to be denied that there was

sufficient consideration for the original contract between the parties or for the later one substituted therefor, and on which the suit rests.

It is true, however, that the complainant could have maintained an action at law against the executor of the estate for the monthly instalments accruing due before the death of the testatrix as well as after, whilst the estate was in his hands for administration; and that she failed to do so, although she went so far as to present an unauthenticated claim therefor, which was promptly rejected. Instead of taking action she waited for more than five years after the death of the testatrix, and two years after the settlement of the final account of the executor, and then filed this bill against the trustee, who had in the meantime come into the possession of the estate under the terms of the will. Founded on the conditions stated, the contention, on behalf of the appellant, is that any right which the complainant might have had to enforce her contract has been barred by her laches.

As the demand made upon the executor was not authenticated as required by law, its rejection did not have the effect to bring any part of it under the operation of the special statute of limitation provided for such cases.* *Robeson* v. *Niles,* 18 D. C. 182, 192; *Coburn* v. *Harris,* 53 Md. 367.

Nor has the right of the complainant to proceed in equity against the estate, in the hands of the trustee, been lost by the mere fact that she failed to prosecute a suit, as she might have done, against the executor before his settlement and discharge. *Zollickoffer* v. *Seth,* 44 Md. 359, 374.

In rendering the decree the trial court overruled the defense of laches to the entire demand, but applied the rule of the statute of limitation as at law and denied recovery of all arrears of the contract instalments that accrued due more than three years before the commencement of the suit.

Had the action been maintainable at law, as it would have been against the testatrix during her life, or her execu-

---

* Testamentary act of Maryland of 1798, Ch. 101, Subch. 8, Sec. 18.— REPORTER.

tor after her decease, this would undoubtedly be the correct judgment to render; for it is well settled that where a debt is payable in independent instalments the right of action accrues upon each as it matures, and if the obligee shall fail to commence his action until the statutory bar has intervened in the case of one or more instalments, he can only recover those not barred when his action was commenced. *B. & H. Turnpike Co.* v. *Barnes,* 6 H. & J. 57; *Bush* v. *Stowell,* 71 Pa. St. 208, 212; *Robertson* v. *Pickerell,* 77 N. C. 302; Angell Lim., Sec. 110; 19 Am. & Eng. Encyc. L. (2d ed.), 205.

The doctrine has been too long established to require citation of authority, that in cases of concurrent jurisdiction courts of equity will hold themselves bound by the statute of limitation that would govern an action at law upon the same demand; and where the subject-matter of the demand is one ordinarily cognizable at law, but, by reason of special conditions, the remedy for its enforcement in the particular case is obtainable solely in equity, the bar of limitation will be applied, either in obedience to the statute, or by analogy, in the same way as at law.

Upon obvious grounds, equity follows the law in all such cases; and for the same reason that it will apply the bar to the enforcement of the demand in accordance with the rule of the statute, it will, ordinarily at least, refuse to apply the bar of laches on a delay of less duration. Conceding that a court of equity may not consider itself absolutely bound to apply the rule of the statute in all cases of the kind, yet, at the very least, there must be something extraordinary in the special circumstances of a particular case to justify the denial of relief, on the ground of laches, when by the terms of the statute there could be no bar in a corresponding action at law.

We perceive no such exceptional circumstances in the case at bar.

The decree will therefore be affirmed, with costs.   It is so ordered.                                    *Affirmed.*

A motion for a rehearing, filed on behalf of the appellants January 28, was denied February 4, 1903.