## DARLING et al. v. BIRNEY et al.

(Court of Appeals of District of Columbia. Submitted October 10, 1923.
Decided April 7, 1924.)

No. 3930.

1. **Executors and administrators ⬤⇒473, 474(4)—Evidence held not to show that decree fixing amount of settlement of estate claim was procured by fraud of executor.**

In a bill for an accounting for moneys and property received by an executor, evidence *held* not to support the claim that the decree fixing the amount which should be paid in settlement of an estate note and deed of trust was procured by executor's fraud and concealment of facts.

2. **Limitation of actions ⬤⇒102(11)—Statute of limitations runs from date of approval of final accounts of executors against persons not under disability.**

When executor's final accounts have been approved, and the balance of the estate remaining in his hands has been turned over to parties entitled thereto, statute of limitations begins to run against all persons not under disability, claiming waste or that the estate has not been fully accounted for.

3. **Limitation of actions ⬤⇒70(1)—Statute begins to run as soon as disability of beneficiary is removed.**

Where executor's final accounts have been approved and the estate distributed, the statute begins to run against persons under disability as soon as the disability is removed and the fact that beneficiaries were not entitled to possession or control of the estate until they were 25 years old does not continue the disability.

4. **Equity ⬤⇒87(1)—Doctrine of ignoring bar of statute of limitations not applicable, in absence of fraud or concealment.**

The doctrine of ignoring the bar of the statute of limitations, where complainants were not guilty of laches, is not applicable, in the absence of fraud, collusion, or concealment of facts.

5. **Executors and administrators ⬤⇒473, 474(4)—Testimony that attorney to whom witness had been referred was unable to explain deduction incompetent.**

In a bill for an accounting for moneys by executor, testimony that attorney, to whom witness had been referred by executor for an explanation of deductions from an estate note, stated that he was unable to furnish such information, *held* incompetent, immaterial, and irrelevant.

Appeal from the Supreme Court of the District of Columbia.

Bill for accounting by Charles T. Darling and another against Helen T. Birney, executrix of the will of Arthur T. Birney, deceased, and others. From a decree dismissing the bill, complainants appeal. Affirmed.

H. S. Barger, of Washington, D. C., and Isador Shapiro, of Richmond, Va., for appellants.

H. Prescott Gatley, Joseph T. Sherier, and J. Holdsworth Gordon, all of Washington, D. C., for appellees.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and SMITH, Judge of the United States Court of Customs Appeals.

SMITH, Acting Associate Justice. This is an appeal from a decree dismissing a bill, praying that an accounting be had to ascertain the

moneys and property received by Arthur A. Birney, as executor of the will of Gay Beatrice Spranger, deceased, and the amount which should have been paid by him as directed by said will, and further praying that a decree be entered against the defendants in favor of the plaintiffs for the sum of $36,076.67, and for other relief.

The record discloses that on April 11, 1869, one Joshua Pierce died, leaving a will in which he devised his entire estate to John B. Blake and Moses Kelly, trustees, to invest and reinvest said estate, and to pay the net income thereof to his nephew, Joshua Pierce Klingle, for life, with remainder over to Klingle's surviving children. Joshua Pierce Klingle died on the 4th of July, 1892, leaving surviving him his wife, Georgianna M. Klingle, and his daughter, Gay Beatrice Klingle, who, in February, 1894, married Edwin I. Darling. Edwin I. Darling, who was the father of the plaintiffs, died on the 13th of February, 1894, and his widow, the mother of the plaintiffs, married F. X. Spranger on the 6th of March, 1895. Mrs. Spranger died on the 20th of June, 1895, leaving surviving her as her sole heirs at law her two children Charles T. Darling and Nancy Darling, the plaintiffs in this case. Charles T. Darling was born on the 11th of June, 1889, and Miss Darling on the 8th of December, 1887.

Joshua P. Klingle at the time of his death left certain real estate, known as Linnæan Hill, which was valued at from $100,000 to $160,-000, and was devised by him to his wife, Georgianna M. Klingle. At the time of the death of Joshua P. Klingle his property was subject to a deed of trust to secure the payment of a note for $89,495.20, executed to the trustees of the estate of Joshua Pierce. The deed of trust and note arose out of certain business transactions had by Klingle with the trustees, and became a part of the estate of Gay Beatrice Spranger on her death. The last will of Gay Beatrice Spranger devised and bequeathed all her property to the Washington Loan & Trust Company, in trust to make certain payments therein specified, and to convey the residue of the estate to her children when all of them had reached the age of 25 years. The will named Arthur A. Birney and Osceola Green as executors thereof. Arthur A. Birney qualified as sole executor on the death of Osceola Green, and said note and deed of trust came into his hands as such executor.

It appears that Klingle purchased the Linnæan Hill property from the trustees of the Pierce estate, and in consideration of the transfer conveyed to the trustees certain real estate owned by him, and gave to them his note for $41,000, which was secured by a deed of trust on the property sold to him by the trustees. Klingle borrowed from the trustees the sum of $20,000, of which $10,000 was secured by a deed of trust on Linnæan Hill and $10,000 by a chattel trust on personal property owned by Klingle. In addition to the indebtedness of $61,000 so secured, Klingle incurred a further indebtedness to the trustees of $23,-559.20 for moneys advanced to him, or paid for him by the trustees, for which sum Klingle gave to the trustees his unsecured notes. On March 1, 1889, Klingle and the trustees had an accounting, and the total indebtedness of Klingle was stated in an original memorandum to be as follows:

| | |
|---|---:|
| Note dated November 1, 1869.................................... | $ 41,000.00 |
| Interest on said note from November 1, 1869, to March 1, 1889.... | 47,560.00 |
| Note dated February 1, 1873.................................... | 10,000.00 |
| Interest on said note from February 1, 1873.................... | 9,650.00 |
| Note dated November 30, 1870.................................. | 5,000.00 |
| Interest on said note from November 30, 1870, to March 1, 1889... | 5,475.00 |
| Note dated May 8, 1878....................................... | 5,000.00 |
| Interest on said note from May 8, 1878........................ | 3,250.00 |
| Advances and payments made by the trustees on Klingle's unsecured notes .......................................... | 11,076.77 |
| | 8,266.77 |
| | 370.30 |
| | 3,845.36 |
| Grand total........................................ | $150,494.20 |

For the *interest* due on the notes, unsecured advances to Klingle, and advances and payments made for him by the trustees he executed to the trustees his said promissory note for $89,494.20, secured by a deed of trust to the Linnæan Hill property. On Klingle's total indebtedness of $150,494.20 he paid to the trustees $73,943.78, which liquidated the notes, amounting to $61,000, and part of the interest thereon, leaving unpaid $76,550.42. On the death of Klingle the trusteeship of the estate was wound up and the trustees thereof turned over to Gay Beatrice Spranger said notes executed to them by her father.

For nearly three years Mrs. Spranger, by herself and her attorney, Arthur A. Birney, endeavored to collect the balance of $76,550.42, apparently due on the note for $89,494.20. Mrs. Klingle and her counsel, the late J. J. Darlington, at first insisted that there was due only the sum of $26,170.89, with interest from July 4, 1892, the date of Klingle's death, and that among the amounts wrongfully included in the note for $89,494.20, or not credited, was $65,935, interest which it was claimed represented income of the Pierce estate, and therefore belonged to Joshua P. Klingle under the terms of Pierce's will.

On June 1, 1894, nearly two years after the death of Klingle, Mr. Birney wrote a letter to Mrs. Spranger, then Mrs. Darling, calling her attention to the memorandum of settlement made by her father with the trustees, on which memorandum the claims of Mrs. Klingle and her counsel were largely based. While insisting that the note was not much, if any, out of the way, Mr. Birney conceded the effect of the figures on the paper submitted to him, and admitted that it disclosed that interest on Klingle's notes to the trustees was made a part of his indebtedness. Mrs. Spranger, then Mrs. Darling, replied that she thought Mr. Birney's idea was the best that could be done under the circumstances and expressed the hope that he would be able to carry it out.

The negotiations continued, and after further examination of figures and accounts Mr. Birney, as attorney for Mrs. Spranger, and Mr. Darlington, as attorney for Mrs. Klingle, agreed in January, 1895, that the sum of $49,315.42, with interest thereon from the date of Klingle's death, should be accepted in full settlement of the note. Mr. Darlington said he would advise his client to pay that amount. On January 10, 1895, by letter Mr. Birney submitted to Mrs. Spranger the settlement agreed upon with Mr. Darlington, and took pains to say that he thought

it was fair to her father and one which in his lifetime she would have approved. On the 31st of January, Mr. Birney wrote to Mr. Darlington that he had received from Mrs. Spranger authority to accept the settlement proposed. Mrs. Klingle, however, declined to accept the offer and Mr. Darlington withdrew from the case.

After the death of Mrs. Spranger, and late in 1895, the matter was taken up with Henry Wise Garnett, then the attorney for Mrs. Klingle. Mr. Garnett informed Mr. Birney that he was authorized to settle for the sum proposed by Mr. Birney, but that he understood that interest was to be paid two years from the *1st of April, 1896*. Mr. Birney corrected Mr. Garnett's understanding as to the interest and the negotiations came to an end.

As a result of the deadlock it was finally agreed to submit the matter to the court for decision. Accordingly in February, 1896, Mrs. Klingle filed a bill in equity against the executor of Mrs. Spranger's will, in which she set out that, in the account of Klingle with the trustees, Klingle should be charged with $61,000 borrowed by him on his secured notes from the trustees, and with the sum of $23,559.20 advanced or paid for Klingle, and with the sum of $76,500, the amount received by Klingle under order of court in equity cause No. 2219. She also alleged that, while she believed that the income of the Pierce estate largely exceeded $4,000 per year from 1877 to 1883, and from 1876 to 1890, she was willing to limit the credits to the following sums: $4,022.97 paid by Klingle to the trustees on the 20th of June, 1890; $69,920.81 paid by him on the 20th of May, 1891; $1,800 per year income from the 17th of December, 1870, to the 1st of April, 1890, except for the period from the 1st of September, 1877, to the 1st of February, 1883, during which period he should be credited with the sum of $4,000 per annum.

To that bill in equity the executor made answer, in which he admitted that the trustees were by order of court on June 27, 1871, required to pay to Klingle the sum of $4,000 per annum out of rents and income of the trust estate, but averred that, inasmuch as Gay Beatrice Spranger was not a party to that proceeding, the order in so far as she was concerned was wholly void and inoperative. It was further averred in the answer that the executor verily believed that the income from the estate of Pierce was for many years less than $4,000 per annum, and that, notwithstanding the fact that the order directing the payment to Klingle of $4,000 per annum had been vacated, the trustees continued to pay at that rate. The answer admitted that the full amount paid by the trustees under the order was $76,500, and averred that only from September 1, 1873, to February 1, 1883, was the income from the estate sufficient to entitle Klingle to the sum of $4,000 per annum or thereabouts. In conclusion the answer stated that the executor was willing to come to an accounting with Mrs. Klingle on the basis of $1,800 per year, beginning December 17, 1870, with the exception of the period from September 1, 1877, to February 1, 1883, during which period he was led to believe that a payment of $4,000 per annum was justified by original accounts between Klingle and the trustees. The executor therefore consented that there should be decreed to be due

from Mrs. Klingle to him as executor the sum of $40,443.73, with interest from the 1st of July, 1892, at the rate of 6 per cent. per annum.

On the issue so joined the court decreed that Arthur A. Birney, the executor, was entitled to $40,473.75 in satisfaction of Klingle's note and deed of trust, and that upon payment to him of that sum by Mrs. Klingle he should deliver to her Klingle's promissory notes. The decree also directed the trustees named in the deed of trust to reconvey to Mrs. Klingle, free of the trust, the lands described therein. On the very same day that the decree was entered fixing the amount that should be paid by Mrs. Klingle in settlement of her husband's note and deed of trust, the executor served on the Washington Loan & Trust Company, legatee in trust of the estate of Mrs. Spranger, deceased, a copy of said decree. On the 2d of December, 1897, the executor wrote to the company to the effect that, after paying all the debts and interest, there remained in his hands as assets of the testatrix, distributable to the company as residuary legatee in trust, a promissory note for $43,432.10, secured by deed of trust, and cash amounting to the sum of $2,649.02, which note and cash were on that date turned over to the company.

Upon this state of facts the court dismissed the original and amended bill, praying for an accounting of moneys and property received by the executor of the will of Mrs. Spranger, and from the decree of dismissal this appeal was taken.

[1] In support of the appeal the appellants contend, first, that the decree of the equity court fixing the amount which should be paid in settlement of the note and deed of trust was procured by fraud on the part of the executor and by his concealment of facts which should have been submitted to the court; second, that the burden rested on the executor of proving that the amount accepted by him in settlement of the note and deed of trust was for the best interest of the estate, and that as he failed to meet that burden he must be held liable for devastavit; third, that the appellants were not guilty of laches in filing their bill, and that the relief prayed for therein was not barred by the statute of limitations; fourth, that the court erred in refusing to permit Mr. Keigwin to testify to an interview had by him with Mr. Thom, to whom the witness had been referred by Mr. Birney for information as to the reduction made in the amount of the note for $89,494.20.

The Darlington compromise, which was approved by Mrs. Spranger, in effect charged Klingle with $61,000 borrowed by him from the trustees on his secured note, $23,559.20 borrowed on unsecured notes, and $76,500 paid to Klingle on order of the equity court, which order was vacated on the 27th of June, 1871, at the suit of Mrs. Darling, or a total charge of $161,059.20. As against that charge the compromise allowed a total credit of $111,743.78, made up of $73,943.78 paid by Klingle to the trustee out of sales of his real estate and $37,800 representing income from the Pierce estate from the 1st of April, 1869, to the 1st of April, 1890, at the rate of $1,800 per annum.

Mrs. Klingle's equity suit accomplished no change in that compromise, except the allowance of $4,000 per annum as income from the 1st of September, 1877, to the 1st of February, 1883, and the disal-

lowance of any income from the 1st of April, 1869, to the 17th of December, 1870. The disallowance of any income from April, 1, 1869, to the 17th of December, 1870, operated to the advantage of Mrs. Spranger's estate to the extent of $3,080, and the allowance of $4,000 per annum from the 1st of September, 1877, to the 1st of February, 1883, to its disadvantage in the sum of $11,916.67, or a net disadvantage of $8,836.67, which, subtracted from the Darlington settlement approved by Mrs. Spranger, left $40,478.75, or $5 more than the amount decreed to be paid by Mrs. Klingle to the executor.

The averment that accounts between Klingle and Moses Kelly, trustee, came to the hands of the executor after the death of Mrs. Spranger, and led him to believe that the income from the Pierce estate warranted the payment of $4,000 per year to Klingle from September 1, 1877, to February 1, 1885, might well be regarded as fraudulent or collusive, if there was any evidence showing or tending to show that no such accounts existed, or that, existing, they did not disclose an income which warranted the payment of $4,000 per annum to Klingle.

Nothing appears from the record showing or tending to show the nonexistence of such accounts, or that they did not come to the executor's notice after Mrs. Spranger's death, or that they did not justify his admission of a $4,000 income for the period specified in his answer— a period, by the way, which was very much less than that claimed in Mrs. Klingle's bill. It cannot be said, therefore, that facts were withheld from the court which would have led it to a conclusion other than that announced in its decree, or that the decree was procured by fraud or collusion. Indeed, there is no evidence which would fairly warrant even a suspicion, much less a presumption, of fraud or collusion.

[2] It may be that the burden of proving that a less amount was due than that which appeared on the face of the note rested on the executor; but, if so, the executor cannot be required to meet that burden in a proceeding commenced nearly 20 years after entry of the decree settling the amount to be paid by Mrs. Klingle to the executor, nearly 20 years after a copy of that decree had been served on the Washington Loan & Trust Company, more than 18 years after the probate court had approved the final accounts of the executor which determined the residue of the estate on his hands, more than 18 years after such residue had been actually distributed to the Washington Loan & Trust Company as residuary legatee under the trust declared in Mrs. Spranger's will, and more than 5½ years after the plaintiffs, the beneficiaries of that trust, had reached full age, at which time each of them sui juris might have sought relief in a court of competent jurisdiction for careless or negligent administration resulting in waste of their mother's estate.

If the executor could be regarded as a trustee of the estate which he administered, that relation ended when his final accounts were settled and the residue of the estate determined by such settlement was turned over to the Washington Loan & Trust Company in accordance with the will of the testatrix. Clarke v. Boorman's Executors, 18 Wall. 493, 509, 21 L. Ed. 904.

The Washington Loan & Trust Company, on the distribution to it of what was left of the estate of Gay Beatrice Spranger, became the

actual functioning and sole trustee thereof. It had prompt notice of the decree directing the executor to accept the sum of $40,473.75 in full satisfaction of Klingle's note, and of the approval by the probate court of the final accounts of the executor. If the decree awarded less than should have been paid in satisfaction of Klingle's note, or if the executor was careless or negligent in not securing a larger amount, or if the accounts were improvidently approved, a right of action immediately accrued to the Washington Loan & Trust Company as trustee to recover from the executor the difference between the actual amount received by him and that which he should have collected. No such action was ever commenced, and the right to do so was barred by the statute long prior to the filing of appellant's bill in equity.

Whether the bar of the statute against the trustee operated as a bar on the beneficiaries it is not necessary to decide, inasmuch as they themselves were not as diligent as the law requires in ascertaining what claim, if any, they had, and in applying for the relief here demanded. Although one of the plaintiffs became 21 years old on the 8th of December, 1908, and the other 21 years old on the 11th of June, 1910, and although both on becoming of age were put upon inquiry as to the nature and extent of the estate bequeathed to them by their mother, neither of them apparently took any steps to investigate the matter until July 24, 1915, and they waited until January 22, 1916, before filing the bill in equity here involved.

Witnesses die and papers and accounts disappear or are destroyed. Justice to executors and fair dealing require the fixing of a time when their responsibility ends. When the executor's administration has been concluded, that is to say, when his final accounts have been approved and the balance of the estate remaining in his hands has been turned over to the parties entitled thereto, the statute of limitations begins to run against all persons, not laboring under a disability, who claim that the estate has not been fully accounted for, or that it has been wasted by negligent or careless administration. Clarke v. Boorman's Executors, 18 Wall. 493, 509, 21 L. Ed. 904.

[3] The statute begins to run against persons under disability as soon as the disability is removed. The disability of one of the plaintiffs having been removed on the 8th of December, 1908, and that of the other on the 11th of June, 1910, the bar of the statute was complete and effective as to both of them when they filed their bill against the executor for an accounting on the 22d of January, 1916, more than 18 years after the executor's administration of their mother's estate had terminated. The fact that plaintiffs did not become entitled to the possession or control of the estate bequeathed to them until both were 25 years old did not continue their disability to sue. Their right to possession was one thing, and their right to maintain an action for waste of their mother's estate was quite another.

[4] If the executor collusively or fraudulently accepted a less sum than was due on Klingle's notes, or if the decree directing him to accept a less amount than should have been paid in satisfaction of the note was procured by fraud, or by the concealment of facts which should have been brought to the attention of the court, a court of equity might well ignore the bar of the statute, if the appellants were not guilty

of laches in enforcing their rights. That doctrine, however, cannot be applied to this case, inasmuch as there was no evidence of fraud, collusion, or concealment of facts, and no evidence of facts from which fraud might be properly presumed.

Mrs. Klingle and the executor dealt with each other at arm's length, and in the absence of fraud or collusion Mrs. Klingle was free to make the best bargain she could in settlement of her husband's obligations. As the settlement was not tainted by fraud, collusion, or deception, the acceptance by the executor of a less sum than Klingle's note called for gave to plaintiff no right of action against Mrs. Klingle, and consequently none against her heirs at law. If any such action had accrued out of the settlement, the right to relief was barred by the statute of limitations.

[5] Counsel for plaintiffs offered to prove by Charles A. Keigwin that he (Keigwin) saw Mr. Thom, to whom the witness had been referred by the executor for an explanation of the deductions from Klingle's note, and that Thom stated to the witness that he was unable to furnish any information relating to said note or the settlement thereof. The court refused to admit that testimony on objection of counsel for the defendants, and that refusal is assigned as error. Mr. Thom was one of the counsel for Mrs. Klingle, and might have been produced as a witness to testify to any fact relevant to the issues raised by the pleadings. The fact that Mr. Thom found himself unable to furnish any information to Mr. Keigwin, standing by itself, was of no value as evidence. The testimony offered was incompetent, immaterial, and irrelevant, and was therefore properly excluded.

We find, first, that the deductions recognized by the Darlington settlement were approved by Mrs. Spranger, the owner of the note, and that her approval was not induced by fraud, collusion, or the concealment of facts which should have been brought to her notice; second, that the adjustment finally made, and the decree authorizing it, was not induced by fraud, collusion, or the concealment of facts which should have been disclosed; third, that the Washington Loan & Trust Company, as residuary legatee under Mrs. Spranger's will, had full notice in 1897 of the settlement of the executor's final accounts, and of the decree fixing the amount to be accepted by the executor in satisfaction of Klingle's obligations, and that any right of action which accrued to the company by reason of such acceptance was barred by the statute of limitations long prior to the termination of the company's trust; fourth, that, as there was no fraud, collusion, or concealment of the facts by the executor, the plaintiffs on reaching full age were put upon inquiry as to the nature, extent, and administration of their mother's estate, and, having failed to assert their rights by proper legal proceedings within 3 years after their disability was removed, the bar of the statute was effective against them at the time their bill in equity was filed; fifth, that there was no collusion between the executor and Mrs. Klingle in fixing the amount to be paid by Mrs. Klingle in satisfaction of her husband's note, and that therefore no right accrued to plaintiffs against Mrs. Klingle or her heirs at law. If such right of action had accrued relief was barred by the statute.

The decree appealed from is affirmed, with costs.