**Ruth A. CURLES, Plaintiff,**

v.

**William L. CURLES et al., Defendant.**

**Civ. A. No. 4432–54.**

United States District Court
District of Columbia.

Dec. 15, 1955.

Walter E. Barton, William R. Fitch, Washington, D. C., for plaintiff.

Whiteford, Hart, Carmody & Wilson, Harry L. Ryan, Jr., Washington, D. C., for defendant.

McGARRAGHY, District Judge.

This is an action for a judgment declaring that the plaintiff is the legal and equitable owner of premises situated in the rear of 137–139 D Street, N. E., Washington, D. C., and for the clear value of the use and occupancy of said premises; that the plaintiff and defendant each is the legal and equitable owner of an undivided one-half interest in and to premises 1251 U Street, S. E., Washington, D. C., and for partition and sale thereof; that the plaintiff and defendant each was the legal and equitable owner of an undivided one-half interest in certain real estate known as parcel 153/105 which was sold on or about May 3, 1949, and for a decree that defendant thereby became and now is the trustee for plaintiff with respect to one-half of the proceeds of the sale of said property and for an accounting by defendant to plaintiff for one-half of the proceeds, together with interest.

The defendant, by counterclaim, has brought into this action real estate consisting of approximately 521 acres in King George County, Virginia, title to which is held by the plaintiff and the defendant as joint tenants, with right of survivorship. The defendant, in addition to denying that the plaintiff is entitled to any of the relief sought in her complaint, has asked the Court to determine that the plaintiff has no ownership, legal or equitable, in said Virginia property and prays that plaintiff be ordered to convey her title to said property to the defendant.

Plaintiff and defendant were married on April 15, 1929, and, after working shoulder to shoulder in establishing a moving and storage business, and after raising a large family, they were divorced in the State of Florida on December 8, 1946. They entered into an agreement denominated "Property Settlement Agreement" which became effective by delivery on or shortly after December 9, 1946, and provided for a cash payment from the husband to the wife in lieu of any alimony or support, said payment "to be in full payment and settlement of all claims which the aforesaid wife may now have or hereafter have against the aforesaid husband for support, maintenance or otherwise".

During the period when plaintiff and defendant were husband and wife, the properties described above were acquired in fee simple titles as follows:

(a) Rear of 137–139 D Street, N. E. on February 23, 1937 in the names of plaintiff and defendant as tenants by the entireties, and conveyed to the plaintiff in her sole name on December 2, 1938, and so held since that date.

(b) 1251 U Street, S. E. on July 1, 1943 in the names of plaintiff and defendant as tenants by the entireties and the record title continues accordingly.

(c) Parcel 153/105 on June 4, 1945 in the names of plaintiff and defendant as tenants by the entireties. It was sold on or about May 3, 1949, the proceeds of sale being paid solely to the defendant.

(d) 521 acres of farm land in King George County, Virginia, in 1945 in the names of plaintiff and defendant as tenants by the entireties.

The defendant first contends that plaintiff's claim for relief should be denied because of the Property Settlement Agreement entered into between the parties under which plaintiff accepted a sum of money in settlement of all "claims" she might have against the defendant. This contention overlooks the fact that to the extent that plaintiff seeks to have

declared her interest in real property, title to which is solely or partly in her name, these are not claims against the defendant which would be barred by the Property Settlement Agreement. These are claims directed towards the property and not toward the defendant. Nor can the agreement be interpreted to include claims arising after the divorce. Defendant also contends that it was intended by the agreement that the defendant would, upon request, be revested with sole title to the properties in question. There is nothing in the agreement to support this contention nor was this contention supported by the evidence. The Property Settlement Agreement does not bar the action of the plaintiff to assert her rights in respect to any of the matters which are the subject of this litigation.

Dealing with the rights of the parties with respect to each of the properties in question, it is my opinion that the following principles are controlling:

### 137–139 D Street, N. E.

This property was acquired by the parties as tenants by the entireties. The plaintiff contributed from her own funds toward the purchase price. On December 2, 1938, while the parties were still married, the property was transferred to the plaintiff in fee simple and the record title continues accordingly to this date. Defendant contends (1) the plaintiff is merely trustee of the property, (2) plaintiff is estopped from asserting her title due to the continuous exclusive possession of the defendant since the time plaintiff terminated active duties with the business, and (3) that plaintiff is barred by laches and the statute of limitations.

■ In attempting to impress a trust upon this property, defendant is obliged, under the law of this jurisdiction, to overcome a strong presumption. In McCartney v. Fletcher, 11 App.D.C. 1, 10, the Court said:

" * * * There seems to be no general rule that can be stated that will determine in all cases when a conveyance will carry with it a beneficial interest, and when it will be construed to create a trust by implication or construction of law; but the intention is to be gathered in each case from the scope of the instrument and the special circumstances under which it was made. There is one general principle, however, that may be stated as settled, and that is, that a conveyance made to a wife or child will be presumed to carry a beneficial interest, and whenever that presumption is attempted to be overcome, it can only be done by the most indubitable evidence. *And where the husband, as in this case, has divested himself of the legal estate in favor of his wife, the presumption that the beneficial interest was intended to pass is so strong as to be almost irrebuttable."* (Italics supplied.)

■ In my opinion, the defendant has not overcome this presumption, but, on the contrary, the evidence establishes that the plaintiff holds both legal and equitable title.

■■ Defendant next contends that plaintiff, having failed to assert her title for a long period of time, is estopped to assert it against him at this time. While it may be true that under certain circumstances a wife may be estopped to assert her title where her property is in her husband's possession, that type of situation is not present here. Estoppel has as its basis the principle that, where one of two innocent persons must suffer, the one who has permitted the harm to come about is the one who must suffer; it contemplates intervention of rights of innocent third parties. (See 26 Am.Jur. pp. 738–739). There have been no rights of third parties intervening here that would justify the application of estoppel.

Defendant also claims that plaintiff's action is barred by the statute of limitations, and it might be so if the statutory period had run during the term of the marriage of the parties. D.C.Code 1951,

§ 12–201. The question is, does the statute run against a spouse during the term of the marriage for a claim one may have against the other? This question is one of first impression in the District of Columbia, but it is not novel elsewhere. (See 34 Am.Jur.—Limitations of Action —§ 377). A basic consideration in determining the correct rule is the marriage relation, a relationship which the courts have classically protected. The view taken by the court in Morrish v. Morrish, 262 Pa. 192, 201, 105 A. 83, 86, is in accord with the majority holding, that under these circumstances, the statute does not apply. There, the court said:

"The best-considered decisions upon the subject in hand, ever since the Married Woman's Property Acts, are to the effect that, owing to the social importance of maintaining the family relation, in suits between wives and their husbands for the protection of the former's property, statutes of limitation, as also presumptions or estoppels by lapse of time, ordinarily, do not affect the rights of the wife, since she cannot be expected to treat her husband as a stranger. As certain courts have well said, any other policy would be apt to beget disagreements and contentions in the family fatal to domestic peace. Bowie v. Stonestreet, 6 Md. 418, 61 Am.Dec. 318, 324; Second National Bank of Beloit v. Merrill, 81 Wis. 151, 155, 50 N.W. 505 * * *."

In Bowie v. Stonestreet, 6 Md. 418, 432, the court said:

" * * * A wife declining to sue her husband, cannot, with propriety, be said to be guilty of gross laches in prosecuting her rights, or of unreasonable acquiescence in the assertion of adverse rights."

And in Mergenthaler v. Mergenthaler, 1945, 69 Cal.App.2d 525, 160 P.2d 121, 124, the court said:

"In an action by a wife for the recovery of her property from her husband, statutes of limitation do not affect her rights 'since she can-

not be expected to treat her husband as a stranger.' Cary v. Cary, 159 Or. 578, 80 P.2d 886, 895, 121 A.L.R. 1371 * * *."

The majority view, as expressed by these decisions, only a few of many to the same effect, see 121 A.L.R. 1382, is the only view that is consistent with the policy of our courts to foster domestic tranquility and avoid "disagreements and contentions in the family fatal to domestic peace." Morrish v. Morrish, supra.

For the purposes of this ruling, suffice it to say that the statute of limitations did not begin to run against the plaintiff until the time the marriage terminated, here by divorce. The plaintiff's claim to the property is not barred by the statute of limitations.

The last contention advanced by defendant as to this property is that laches bar plaintiff from asserting her title. Ordinarily there is not always a conclusive period of time to be applied to determine when remedy will be barred on the ground of laches.

In Major v. Shaver, 88 U.S.App.D.C. 148, 149, 187 F.2d 211, 212, the court said:

" * * * The doctrine of laches is 'the principle that equity will not aid a plaintiff whose unexcused delay, if the suit were allowed, would be prejudicial to the defendant.' Russell v. Todd, 309 U.S. 280, 287, 60 S.Ct. 527, 531, 84 L.Ed. 754; ' * * * in considering questions of laches, the utmost leniency is manifested by the courts where it appears that the delay is due to the intimate personal relations existing between the parties and the high degree of confidence reposed by one in another. In such case, and especially when the family relation exists, the same degree of diligence is seldom required.' Horton v. Horton, 63 App.D.C. 375, 376, 72 F.2d 831, 832."

The period of laches can be said to run from the time of the divorce of the parties, in view of the Major case, supra, and the relation of the parties.

■ Since this claim is not barred by the statute of limitations, defendant is under a burden to present exceptional circumstances to justify the application of laches to plaintiff's claim. As the court said in Washington Loan & Trust Co. v. Darling, 21 App.D.C. 132, 140:

"Upon obvious grounds, equity follows the law in all such cases; and for the same reason that it will apply the bar to the enforcement of the demand in accordance with the rule of the statute, it will, ordinarily at least, refuse to apply the bar of laches on a delay of less duration. Conceding that a court of equity may not consider itself absolutely bound to apply the rule of the statute in all cases of the kind, yet, at the very least, there must be something extraordinary in the special circumstances of a particular case to justify the denial of relief, on the ground of laches, when by the terms of the statute there could be no bar in a corresponding action at law."

■ Here, there are no such exceptional circumstances as to justify the application of laches.

### Plaintiff's Claim for Value of Use and Occupancy of 137–139 D Street, N. E.

Plaintiff claims that mutual accounts existed between her and defendant as to her claim for fair rental value of the D Street premises from December 6, 1946 to date, and, on the other hand, defendant's claim for the amount he expended in that period in paying taxes and insurance on the premises, and, therefore, plaintiff contends that the three year statute of limitations is not applicable with respect to her claim for the clear value of the use and occupancy of the premises by the husband from the time of the divorce.

■ As a general rule, there are mutual accounts when each side has an actionable claim, arising out of the same account. Goodsole v. Jeffery, 202 Mich. 201, 168 N.W. 461, 1 A.L.R. 1060. But here, defendant has no actionable claim per se. He has only a right of set-off. Anderson v. Reid, 14 App.D.C. 54.

The present indebtedness between the parties does not constitute a mutual account, and the three year period of limitations is applicable.

The defendant's claim against plaintiff for the amount of taxes and insurance he paid are in the nature of improvements, since the payment of taxes prevented tax liens from being placed on the property, and the benefit of any insurance purchased by the defendant on this property could inure only to the plaintiff.

Plaintiff's claim against the defendant for the fair rental value of the D Street premises will be allowed for the three year period preceding October 16, 1954 (the date of filing suit) and from October 16, 1954, to date of judgment herein, at a rate of $100 per month, less the set-off allowed defendant.

Defendant's set-off for taxes and insurance paid on the D Street property will be allowed for the three year period preceding October 16, 1954, and from October 16, 1954 to date of judgment, in an amount not to exceed plaintiff's judgment for fair rental value. If the parties are unable to agree on and stipulate the sum so paid for taxes and insurance, this cause will be set down for further hearing for the sole purpose of determining that amount.

### 1251 U Street, S. E.

Plaintiff seeks a judgment declaring herself and defendant to be tenants in common, in equal shares, of the "U Street property". This property was acquired in 1943. Title was taken in the names of the parties as tenants by the entireties.

■ By virtue of Sec. 16–409, D.C. Code, this court has the power to make a determinaion of the property rights of divorced parties. While a foreign divorce decree has already terminated the marriage of the parties, the statute has been construed as applicable to deter-

mine property rights of parties divorced by a foreign decree, in the absence of a valid antenuptial or post-nuptial agreement. Heath v. Heath, 89 U.S.App.D.C. 68, 189 F.2d 697; Scholl v. Scholl, 80 U.S.App.D.C. 292, 152 F.2d 672.

In making a proper disposition of the property under Sec. 16–409, D.C. Code, there are many elements that are to be weighed. After considering the monetary contribution by the plaintiff to the business operation, joint efforts on the part of both parties toward the business operation, which was the source of funds with which this property was purchased, the duration of the marriage, the number of children, and the lack of any evidence of marital misconduct on the part of either party, I am of the opinion that a just disposition of this property will be effected by an equal division of this property between the parties.

### Parcel 153/105

Plaintiff seeks a judgment declaring defendant to be trustee in her behalf of one-half of the proceeds of Parcel 153/105, referred to as the New York Avenue property. This property was acquired during the marriage of the parties and held by them as tenants by the entireties. On April 11, 1949, subsequent to the divorce, the property was sold and both parties joined in the deed. Plaintiff received no part of the sale price of the property.

Plaintiff claims that she was induced by fraud to sign the deed, and that the fraud operates (1) to make defendant the constructive trustee of her portion of the price and (2) to postpone the running of the statute of limitations until the time the fraud was discovered, in 1955.

While the facts as developed showed that plaintiff was not acting in her own best interest when she signed the deed, there was no evidence of fraud in the transaction. The statute of limitations began to run from the time defendant received the funds from the sale of the property in question.

Plaintiff had an adequate remedy at law, before the running of the statute of limitations, for recovery of these monies. Washington Loan & Trust Co. v. Darling, supra.

Even if defendant is a constructive trustee, the action is barred by the statute. Filson v. Fountain, 90 U.S.App.D.C. 273, 197 F.2d 383.

Here, the record is devoid of showing of fraud, so the statute still applies. Darling v. Birney, 54 App.D.C. 318, 324, 297 F. 1011.

The plaintiff's claim is barred by the statute of limitations.

### 521 Acres of Farm Land In King George County, Virginia

In his counterclaim, defendant seeks a judgment declaring him to be the owner in fee of certain Virginia property, title to which is in the parties as tenants by the entireties, and requests the court to order plaintiff to execute such deeds as may be required for him to perfect his title. The Pre-trial statement refers to the property as consisting of approximately 521 acres of farm land. The defendant testified that there were two purchases, both in 1945, the first of approximately 227 acres and the second an adjoining 297 acres.

Before viewing the merits of this contention, the jurisdiction of this court to consider such a claim which might affect the title to foreign real property must be determined. In Columbia National Sand Dredging Co. v. Morton, 28 App.D.C. 288, 296, 7 L.R.A.,N.S., 114, the court said:

" * * * From a very early period, courts of equity having jurisdiction of the person of a party have exercised the power to compel him to perform a contract, execute a trust, or undo the effects of a fraud, notwithstanding it may relate to or incidentally affect the title to land in another jurisdiction. The doctrine is thoroughly well established within this limitation, that the principal question involved must be one of contract, trust, or fraud, raising up a

duty which a person within the power of the court may be compelled to perform, although the act when performed may operate to affect, and even to pass, the title to land outside the territorial jurisdiction of the court. As was said by Mr. Justice Field in Pennoyer v. Neff, 95 U.S. 714, 723, 24 L.Ed. 565, 569: 'Thus the State, through its tribunals, may compel persons domiciled within its limits to execute, in pursuance of their contracts respecting property elsewhere situated, instruments in such form and with such solemnities as to transfer the title, so far as such formalities can be complied with; and the exercise of this jurisdiction in no manner interferes with the supreme control over the property by the State within which it is situated. Penn v. Baltimore, 1 Ves.Sr. 444 * * *.' "

 Clearly then, if this situation is one in which the property in Virginia is impressed with a trust, this court can compel plaintiff as trustee to perform an act which would ultimately pass title to the property to defendant. Stone v. Fowlkes, 29 App.D.C. 379. The defendant's contention is that, having furnished all the consideration for the property, he is entitled to a judgment declaring plaintiff to be a mere trustee for his benefit, and an order compelling plaintiff to transfer her legal title to defendant.

A determination of whether or not this is a trust must be made under Virginia law which is quite similar, if not identical, to our local law. In Eaton v. Davis, 165 Va. 313, 182 S.E. 229, 231, the property was held by husband and wife jointly during their marriage. The husband sought a decree vesting title in fee in him. The court said:

"The principle is stated in Irvine v. Greever, 32 Grat. (73 Va.) 411, 417, 418, thus: 'The doctrine generally, if not universally, recognized is, that when a conveyance of real estate is made to one person, and the consideration paid by another, it presumed that the party advancing the money intended a benefit to himself, and accordingly a resulting trust is raised in his behalf. But when the conveyance is taken to a wife or child, or to any other person for whom the purchaser is under an obligation to provide, no such presumption attaches. On the contrary, the inference in such case is that the purchase was designed as an advancement to the person to whom the conveyance is made. It is, however, always a question of intention, and the trust in favor of the wife or child may be rebutted by parol proof, showing that the party intended the purchase for his own benefit exclusively.' "

Under the evidence in this case, no resulting trust in favor of the defendant was established. There being no trust, no fraud, and no contract in relation to the Virginia property, this court is without jurisdiction to require plaintiff to transfer her legal title to defendant.